### CRONKHITE v. HERRIN.

*(Circuit Court, W. D. Wisconsin. 1883.)*

1. STATUTE OF LIMITATIONS—PARTIAL PAYMENT BY PARTNER—DISSOLUTION OF FIRM—VERDICT FOR DEFENDANT.

    As the only evidence offered to take the claim in this case out of the statute of limitations is a partial payment made by a partner after the dissolution of the firm, such evidence will be struck out on motion of defendant, and a verdict in his favor directed.

2. PARTNERSHIP—POWER OF PARTNERS AFTER DISSOLUTION.

    After dissolution of a partnership, one partner has no power to create or continue a debt as against his copartners, either by express agreement or by partial payments.

At Law. Decision on the motion to strike out evidence of payment of one joint debtor to take the case out of the statute of limitations.

*Finch & Barber*, for plaintiff. *William T. Vilas*, of counsel.

*George W. Cate*, for defendant. *S. U. Pinney*, of counsel.

BUNN, J. Since the decision of *Bell* v. *Morrison*, by STORY, J., in 1 Pet. 351, there could be little doubt, in this court, that upon the dissolution of a copartnership the power of one partner to bind the other partners wholly ceases, and that, as a correct application of that doctrine, one partner has no power to create or continue a debt as against his copartner, either by an express agreement or by partial payment; for, although the case was not one where the power to bind by the continuation of a debt by partial payment actually arose, but only the renewal of the debt after it was barred by the statute, it would be hard to distinguish the two cases on principle. And so, accordingly, we find that in New York, and other states where the authority and reason of *Bell* v. *Morrison* are admitted, the principle has been applied to cases precisely in the situation of the one at bar; that is to say, where it is sought to continue the obligation against

one joint contractor by means of a partial payment made by the other before the statute has fully run, so as to make the original obligation binding for the full period prescribed by the statute from the date of such payment. The principle is the same in the one case as the other; and the nature of the power in the hands of one joint contractor to bind the other is the same. And there can be no doubt that the statute of Wisconsin, which, in my judgment, simply expresses the true doctrine of the law on the subject in this country, was intended to cover, and does cover, both cases. It gives the full benefit of the statute of limitations to joint contractors, as against the effect of a payment made or promises to pay by a co-contractor. Its language is:

"If there are two or more joint contractors, * * no one of them shall lose the benefit of the provisions of this chapter, so as to be chargeable by reason only of any payment made by any other or others of them."

This clearly applies to cases of payment before as well as after the statute has run. The only remaining question is whether there is anything in the written contract of dissolution, made by the partners on March 3, 1873, which prevents the application of the statute to this case. In my judgment, clearly, there is not. That agreement is very clearly expressed, leaving little room for construction. Its effect is this: (1) It dissolves the partnership from that day; (2) it provides that defendant, Herrin, shall assume and discharge the indebtedness of the firm of Cronkhite & Herrin to L. Yeomans and Anna Herrin; (3) that Cronkhite assumes and agrees to discharge all the other debts of the firm, and to save the firm and defendant, Herrin, harmless therefrom; (4) all the assets and property of the firm are to belong to Cronkhite; (5) Cronkhite is authorized, for a period of 60 days, to sign the firm name to notes taken as renewal notes, and which mature within that time, or in liquidation of other existing indebtedness of the firm.

It seems clear there is nothing in this contract of dissolution that any way enlarges the authority of Cronkhite to bind his former copartner, except to authorize him to give renewal notes for notes falling due within 60 days, and for the unliquidated indebtedness of the firm. By this very agreement Cronkhite assumes the debt in suit, together with all other of the firm debts, except those owing to Anna Herrin and L. Youmans, and agrees to save Herrin harmless from the payment of them. So that, instead of adding anything to Cronkhite's power to bind Herrin in respect to this claim, Herrin, as between the partners, was, upon a valid consideration, wholly dis-

charged from its payment. And certainly the effect of the provision in regard to the giving of renewal notes being express and specific in its terms, and giving Cronkhite power in the particular case to do what he would not otherwise possess power to do under the law, cannot be to extend the power beyond what is so expressly given, and what the law would otherwise have given. Its tendency would rather be in the direction of an exclusion of any power to bind his partner not so expressly given or possessed.

The case of the *Nat. Bank* v. *Colton* is relied upon by the plaintiff to show that the payment was made by Herrin, or by Cronkhite as agent for Herrin, and under his direction. But clearly that case is not in point here.

The supreme court of Wisconsin reserved the finding of the circuit court on the question of fact as to when and by whom a certain payment was made, and the decision is based upon the finding that Barnes made the payment of $585 as the agent and under the direction of Gormerly, and so the payment was binding in its effect upon Gormerly, as though made by him. And all the cases cited and relied on in that case are of that character.

In *Winchell* v. *Hicks,* for instance, (18 N. Y. 558,) when sureties on a joint and several note were called on for payment, and they directed the holder to call upon the principal for payment, and the principal made a payment on the note, it was held such an acknowledgment of liability as to arrest the running of the statute against the sureties. And so of all the other cases there cited. But the agreement of dissolution in this case does not in any sense make Cronkhite the agent of Herrin to make a payment on those notes. On the contrary, the evident effect of the agreement is that Cronkhite assumes these debts and agrees to pay them exclusively as his own debts. His payments, then, are made, not so much as agent for Herrin as on his own account.

I do not see that the contract adds anything to Cronkhite's authority to pay, or to bind Herrin by his payments. Without any such contract assuming the debt as his own individual debt, as between him and his partner he had, under the law, full authority to make payments as well for his partner as for himself, but had no authority to bind his former partner by partial payment so as to take the case out of the statute or continue the obligation as to Herrin. After the making of the contract he was still authorized to pay the debt, and in addition, as between him and Herrin he was solely bound to pay it. The contract, then, in the view I have taken, does not help to take the plaintiff's case out from the operation of the statute. The

evidence, therefore, of the partial payments made by Cronkhite, offered for the purpose of creating and continuing the obligation as against defendant Herrin, must be stricken out. And if, as intimated by plaintiff's counsel, they have no further evidence to offer, the court will direct a verdict for the defendant.

No further evidence being offered, the court directed a verdict.